Filed 5/18/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E072843 |
| Plaintiff and Respondent, | |
| v. | (Super.Ct.No. RIF1402333) |
| CARL RAY FLORES, JR., | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT

The Court ORDERS the opinion modified by replacing the language in footnote 4 with the following language instead:

Section 1170 is inapplicable because its relevant subdivisions address determinate sentencing, and attempted murder receives an indeterminate sentence. (§ 1170, subds. (a)-(c).) Section 190 is inapplicable because it provides the punishment for murder. (*Miranda*, *supra*, 192 Cal.App.4th at p. 415.)

Except for this modification, which does not affect the judgment, the opinion is unchanged.

CERTIFIED FOR PUBLICATION

SLOUGH
                                                                                    J.

We concur:

MILLER
          Acting P. J.

RAPHAEL
          J.

1

Filed 4/22/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072843 |
| v. | (Super.Ct.No. RIF1402333) |
| CARL RAY FLORES, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Thomas Kelly, Judge. Affirmed with directions.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

After hearing evidence that defendant Carl Ray Flores shot a man in the neck at close range, a jury convicted him of attempted premeditated murder with a 25-year-to-life gun enhancement. After trial, Flores admitted a prior serious felony, a prior prison term, and two prior strike offenses, which made him a third strike offender and exposed him to a life sentence under the "Three Strikes" law. (Pen. Code, §§ 667, subds. (c), (e)(2)(A), unlabeled statutory citations refer to this code.) At sentencing, the judge struck the prison prior and prior serious felony enhancements but nevertheless added them to the minimum term of Flores's life sentence, to reach a total indeterminate term of 69 years.

On appeal, Flores raises two routine sentencing issues and one new question about the role of enhancements in third strike sentencing. If a trial court exercises its discretion to strike an enhancement under section 1385 "in furtherance of justice," may the enhancement still be used to increase the minimum term of the defendant's life sentence under what is commonly called "Option 3" of third strike sentencing? (§ 667, subd. (e)(2)(A)(iii).) We conclude the answer is no.

In cases involving Option 3, "the Three Strikes law uses enhancements in two distinct ways: to calculate the minimum term of the indeterminate life sentence and to add an additional, determinate term to be served before the indeterminate life sentence." (*People v. Williams* (2004) 34 Cal.4th 397, 403 (*Williams*).) Once a court exercises its discretion to strike an enhancement under section 1385 for sentencing purposes, the enhancement may no longer be used to increase punishment, whether as a separate determinate term to be served before the life sentence or as a means of lengthening the

2

minimum term of the life sentence. As we'll discuss, the judge in this case made the additional error of adding the enhancements *twice* to the minimum term of Flores's life sentence.

The two other arguments Flores raises on appeal—that the judge erred by refusing to strike or reduce the gun enhancement and treat his two prior strike convictions as a single strike under *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*)—lack merit. We therefore remand for resentencing but affirm in all other respects.

# I

## FACTS

Flores is a member of the Moreno Valley Locos gang and goes by the name Loquito. On May 31, 2014, the victim, Manley G. went to his friend Heather's home to collect a drug debt from a man named Moe. But before Manley could get the money, another man, Frank, arrived to drive Moe someplace else. Angry that Frank was saving Moe from paying up, Manley bashed in Frank's front windshield and drove off. Manley's outburst brought the police to Heather's, which did not sit well with Flores because her home was a common hangout for his gang.

Later in the day, Manley was at another friend's house when he received a call from Heather. As he was on the phone with her, Flores pulled up and approached Manley, armed with a .380-caliber handgun. Manley suspected Flores was angry with him over the windshield incident. As he tried to explain his side of the story, Flores shot him in the neck at point blank range and drove off.

3

Manley spent three days in the hospital and survived the shooting. The bullet entered the left side of his neck and exited through his back. Shrapnel fragments from the bullet were found in the soft tissue in his neck, as well as near his ribs and arteries. He suffered loss of hearing in his left ear and numbness in both arms.

The jury convicted Flores of attempted premeditated murder (§§ 664(a), 187, 189) and found he personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). Before sentencing, Flores admitted three prior felony convictions: carjacking and attempted murder in 1999 and manufacturing a weapon in prison in 2007. Both the carjacking and attempted murder convictions qualified as prior strike offenses (§ 667, subds. (c) & (e)(2)(A)), but because they were tried in the same proceeding, they supported only one prior serious felony conviction for purposes of the five-year enhancement (§ 667, subd. (a)). Flores also admitted he served a prior prison term (§ 667.5, subd. (b)) for the carjacking and attempted murder convictions.

Flores filed a *Romero*[1] motion before sentencing, asking the judge to treat his carjacking and attempted murder convictions as a single strike offense under *Vargas* because they arose from the same incident and involved the same victim. The judge denied the motion, concluding the two offenses arose from distinct acts with different criminal objectives. The judge also declined Flores's request to strike or reduce the gun enhancement because of the violent and callous nature of the shooting. The judge

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

4

sentenced him to a total of 69 years to life under Option 3 of the Three Strikes law. (§ 667, subd. (e)(2)(A)(iii).)

## II

## ANALYSIS

A.     *The Gun Enhancement*

Section 12022.53 provides three different sentence enhancements for the personal use of a firearm in the commission of certain offenses: a 10-year enhancement for personal use (§ 12022.53, subd. (b)); a 20-year enhancement for personal and intentional discharge (§ 12022.53, subd. (c)); and a 25-year-to-life enhancement for personal and intentional discharge causing great bodily injury or death (§ 12022.53, subd. (d)), which is the one at issue here.

Section 12022.53 enhancements used to be mandatory, but as of January 1, 2018, trial judges have discretion to strike or dismiss them "in the interest of justice" under section 1385. (§ 12022.53, subd. (h); see also *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*) ["Senate Bill No. 620 . . ., which added section 12022.53, subdivision (h), gave the trial court discretion . . . '[to] strike or dismiss an enhancement otherwise required to be imposed by this section'"].) Flores argues the judge abused his discretion by refusing to strike his gun enhancement or reduce it to a lesser enhancement in section 12022.53.[2] We disagree.

---

[2] Although the judge accepted defense counsel's argument that if he did not think it appropriate to strike the 25-year-to-life enhancement entirely, he could reduce it to a lesser section 12022.53 enhancement, we note there is a split of authority on this issue.

*[footnote continued on next page]*

We review the denial of a motion to dismiss an enhancement for abuse of discretion and will not reverse the ruling unless it "'is so irrational or arbitrary that no reasonable person could agree with it.'" (*Pearson*, *supra*, 38 Cal.App.5th at p. 116; *People v. Carmony* (2004) 33 Cal.4th 367, 375, 377.)

Here, when ruling on Flores's motion, the judge explained, "I don't feel that I should exercise discretion to [strike or] lessen that 25 to life [enhancement] because this was a shot right through the neck, and I can't imagine anything more serious. If it had been just a couple centimeters one way or the other, this would have been a homicide." The judge also noted that Flores had been on parole for only about a month before reoffending.

Flores argues the judge's decision was irrational because he placed too much weight on the seriousness of the injury and failed to recognize that even defendants who kill their victims are eligible to have their firearm enhancements stricken under Senate Bill No. 620. According to Flores, "Logically, one would be more lenient toward a defendant who does not kill his victim, but here the court took the opposite and irrational position, blaming appellant because he almost killed the victim." This argument boils

---

(See, e.g., *People v. Morrison* (2019) 34 Cal.App.5th 217 [trial court may reduce gun enhancement]; *People v. Tirado* (2019) 38 Cal.App.5th 637, review granted Nov. 13, 2019, S257658 [trial court may not reduce enhancement].) In *People v. Yanez* (2020) 44 Cal.App.5th 452, our court agreed with *Tirado* and concluded judges lack discretion under sections 1385 or 12022.53 to impose a lesser enhancement. (*Yanez*, at pp. 556-557.) In any event, because we conclude the judge did not abuse his discretion in imposing the enhancement, declining to reduce the enhancement would not be error even under the *Morrison* view.

down to a claim that defendants who don't kill their victims should be treated with more leniency than those who do.

But the law doesn't reward sheer luck. The factors a trial court must consider when determining whether to strike a gun enhancement "are the same . . . the trial court must consider when handing down a sentence in the first instance." (*Pearson*, *supra*, 38 Cal.App.5th at p. 117, citing Cal. Rules of Court, rules 4.410, 4.421 & 4.423.) Among those factors are whether "'[t]he crime involved *great violence*, . . . *threat* of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness'" and whether "'[t]he defendant has engaged in *violent* conduct that indicates a serious danger to society.'" (*Pearson*, at p. 117, italics added.)

Contrary to Flores's argument, none of these factors places any import on whether the victim died from the defendant's use of a gun. The focus, rightly so, is on the *threat* of violence or injury and the degree of danger the defendant poses to the public. As such, the trial judge acted well within his discretion when he focused on the seriousness of the injury Flores inflicted and the high degree of callousness it takes to shoot someone in the neck at close range over a minor transgression. And, given that Flores tried to kill the victim after only recently having been released from prison for the very same offense, the judge could reasonably conclude he posed a serious danger to the public. We uphold the decision to impose the enhancement rather than dismiss or reduce it.

B.      *The Prior Strikes*

Next, Flores argues the judge erred by denying his motion to treat his carjacking and attempted murder convictions as a single strike under *Vargas*, which held that multiple convictions "arising out of a single act against a single victim" count as only one strike. (*Vargas, supra*, 59 Cal.4th at p. 637.) As we'll explain, the judge properly determined *Vargas* does not apply because Flores's offenses were based on separate criminal acts.

1.      *Facts*

Because Flores pled guilty to the carjacking and attempted murder charges, the following facts come from the victim's preliminary hearing testimony in that case. Around 3:30 a.m. on March 28, 1998, Flores and codefendant Joseph Marruffo asked the victim to drive them to a minimart in San Jacinto so they could use the payphone. When the victim reached the intersection where he planned to turn, Flores, who was in the front passenger seat, told him to keep driving straight. From the backseat, Marruffo pulled out a knife and pressed it against the victim's torso. The victim drove until they came across a dark alley next to an empty field, where Flores told him to pull over.

As Flores got out of the car and walked to the driver's side, the victim locked his door, took his wallet from the glove box, and considered whether to make a run for it. But before he could do so, Marruffo grabbed his wallet and ordered him to unlock the door. The victim complied, and Flores pulled him out of the car by his belt. As Flores searched him for valuables, the victim noticed Flores also had a knife. After the search Marruffo

8

told Flores to kill the victim. Flores tried to stab him in the chest, but he twisted away and the blade caught his arm instead. The victim fell down and was able to run off as Flores got into the driver's seat and drove away.

2.    *Analysis*

As with the gun enhancement, a court may dismiss a prior strike conviction under section 1385 "in furtherance of justice," and we review a decision not to do so for abuse of discretion. (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161.)

Flores argues the judge should have treated the carjacking and attempted murder convictions as a single strike under *Vargas* because the offenses "arose from the same case and were part of an indivisible transaction, committed at the same time, against a single victim." Thus, he argues, the crimes were so "closely connected" they constitute a single strike. This mischaracterizes *Vargas*.

In that case, the defendant had two prior strike convictions—carjacking and robbery—that arose from the single act of forcibly taking the victim's car. When the defendant was later convicted of another felony, the trial court treated the convictions as two separate strikes under the Three Strikes law. (*Vargas*, *supra*, 59 Cal.4th at p. 638.) Our Supreme Court reversed the sentence, holding that a "*single act* against a single victim" cannot supply the basis for more than one strike offense. (*Id.* at p. 637, italics added.) The court explained that when a person commits a single act that violates multiple provisions of the Penal Code, they do not pose a greater risk to society simply

9

because the Legislature has chosen to criminalize the act in different ways. (*Vargas*, at p. 646.)

*Vargas* distinguished this "extraordinary" circumstance from the more common situation where a defendant commits "multiple criminal acts . . . in a single course of conduct." (*Vargas*, *supra*, 59 Cal.4th at p. 648.) That's what happened in *People v. Benson* (1998) 18 Cal.4th 24, where the defendant's two prior strike convictions (for burglary and assault) arose from a single incident during which he entered his neighbor's apartment, forced her to the floor, and stabbed her repeatedly. (*Id.* at p. 27.) The *Benson* court held the burglary and assault convictions could not be treated as a single strike because, though there was only one incident, the defendant engaged in multiple criminal acts during the incident, and the strike convictions were based on separate acts. (*Id.* at pp. 28-31, 36, fn. 8.)

Flores is therefore wrong that a "close connection" between the offenses or the fact they arose during the same incident against the same defendant triggers *Vargas* treatment. It is the act, not the incident or course of conduct, that must be the same. And here, Flores's carjacking and attempted murder of the victim were clearly based on separate acts. Flores completed the carjacking when he pulled the victim out of his car, and he committed the attempted murder when he stabbed the victim sometime later, after searching him and determining he had nothing else worth stealing. Unarmed and outnumbered, the victim posed no danger to Flores or his codefendant. Flores could have taken the car without trying to kill him, but he didn't, and his two crimes posed two

different dangers to the public. The judge therefore properly declined to treat these offenses as a single strike.

## C. *Sentencing Errors*

The parties agree the judge miscalculated Flores's sentence under the Three Strikes law but disagree as to the impact that striking the prior serious felony enhancement has on the sentence. As we'll explain, enhancements may be added only once to the minimum indeterminate term under Option 3, and enhancements that are stricken may not be used to lengthen *any* aspect of the sentence.

We start by setting out the rules for third strike sentencing then turn to Flores's sentence.

### 1. *Third strike sentencing*

The Three Strikes law requires all third strike offenders to receive a life sentence with the "minimum term" (the amount of time they must serve before becoming eligible for parole) as the longest of three options. (§ 667, subd. (e)(2)(A); see also *People v. Dotson* (1997) 16 Cal.4th 547, 550, 552 (*Dotson*).) In addition, the term for any applicable enhancement is imposed as separate determinate term to be served before the life sentence. (*Williams*, *supra*, 34 Cal.4th at p. 403.)

The three options for calculating the minimum term of the life sentence (the "minimum indeterminate term" or simply the "minimum term") are set out in section 667, subdivision (e)(2)(A). "Option 1" calculates the minimum term by tripling the term that would otherwise apply to the offense. (§ 677, subd. (e)(2)(A)(i).) The minimum term

11

in "Option 2" is 25 years to life. (§ 677, subd. (e)(2)(A)(ii).) And "Option 3," sometimes referred to as the "traditional sentencing" option, calculates the minimum term using normal determinate and indeterminate sentencing procedures, including enhancements. Under Option 3, the minimum term is "the term determined by the court pursuant to section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046." (§ 667(e)(2)(A)(iii).)

While the minimum terms under Options 1 and 3 will vary from case to case, Option 2 "essentially acts as a default to ensure that the defendant's indeterminate term will always be a minimum of 25 years." (*Dotson*, *supra*, 16 Cal.4th at p. 552.) Option 1 triples the term for the offense, and doesn't include enhancements, whereas Option 3 *does* include enhancements but doesn't multiply the base term for the offense by any number. (*Williams*, *supra*, 34 Cal.4th at p. 403.) As such, Option 1 will usually be the greatest "when the current crime is particularly serious, and thus carries a significant sentence," and Option 3 will generally yield the greatest minimum term "when the defendant has an extensive criminal recidivist history, and hence there are numerous applicable enhancements." (*Dotson*, at pp. 552-553.)

Next, because the Three Strikes law provides that a defendant's life sentence "shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law" (§ 667, subd. (e)(2)(B)) and shall be "in addition to any other enhancement or punishment provisions which may apply" (§ 667, subd. (e)), the

12

court imposes any applicable enhancements as a separate determinate sentence to be served before the life sentence. Thus, though it may seem counterintuitive, in cases where Option 3 yields the longest minimum indeterminate term, enhancements are used *twice*— "to calculate the minimum term of the indeterminate life sentence and to add an additional, determinate term to be served before the indeterminate life sentence." (*Williams*, *supra*, 34 Cal.4th at p. 403.) Our Supreme Court has held that this dual use of enhancements in Option 3 sentences does not run afoul of section 654's rule against double punishment. (*Dotson*, *supra*, 16 Cal.4th at pp. 557, 560; *Williams*, at p. 403.)

*People v. Miranda* (2011) 192 Cal.App.4th 398 (*Miranda*) is instructive for cases like this that involve Option 3 sentencing on an attempted murder conviction. The defendant in *Miranda* was convicted of attempted premediated murder; he also had a 25-year-to-life gun enhancement and a one-year prison prior enhancement.[3] (*Id.* at p. 417.) As we've seen, Option 3 directs the trial court to calculate the minimum term by using one of three sentencing provisions: (i) section 1170, including "any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2," (ii) section 190, or (iii) section 3046. (§§ 667, subd. (e)(2)(A)(iii).)

---

[3] Although the defendant had two qualifying prior strike convictions, the prosecution did not allege any prior serious felony enhancements. (§ 667, subd. (a); *Miranda*, *supra*, 192 Cal.App.4th at p. 403.)

13

For attempted murder, the relevant provision is section 3046.[4] (*Miranda*, *supra*, 192 Cal.App.4th at p. 415.) Under that provision, "an inmate imprisoned under a life sentence shall not be paroled until he or she has served the greater of" either a "term of at least seven calendar years" or a "term as established pursuant to any other law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole." The *Miranda* court correctly noted that although section 3046 does not expressly mention enhancements, our Supreme Court has held that the provision's directive to impose a 'term as established pursuant to any other provisions of law," includes terms for enhancements. (*People v. Acosta* (2002) 29 Cal.4th 105, 115 (*Acosta*) [when section 3046 is used to calculate the minimum indeterminate term under Option 3 of third strike sentencing, that term "includes any applicable enhancement that would be used to lengthen the term the defendant would receive absent the Three Strikes law"].)

Thus, *Miranda* concluded the trial court's use of the enhancements in both steps of the sentence calculation was proper—to lengthen the defendant's minimum indeterminate term and as a separate determinate term. "[T]he trial court correctly determined that defendant's base sentence under Option 3 was 33 years"—that is, 7 years for the attempted murder, plus 25 years, plus 1 year. (*Miranda*, *supra*, 192 Cal.App.4th at

---

[4] Section 1170 is inapplicable because it governs determinate sentencing and attempted murder receives an indeterminate sentence. Section 190 is inapplicable because it provides the punishment for murder.

p. 417.) "To that base term the trial court properly added 26 years for the enhancements . . . to establish the minimum parole eligibility period of 59 years." (*Ibid.*)

To summarize, when Option 3 yields the longest minimum indeterminate term, the court uses enhancements twice—once in calculating the minimum term and a second time to add an additional term of punishment. We now turn to Flores's sentence.

### 2. *Additional facts*

In their sentencing brief, the People recommended a total sentence of 100 years to life, which they reached by improperly adding the terms for Flores's three enhancements to his sentence three times instead of twice. That is, they used the enhancements twice when calculating the minimum indeterminate term (to reach a term of 69 years) then recommended the judge impose all three enhancements for an additional term of 31 years.

At the sentencing hearing, the judge noted he had discretion to strike the prison prior and prior serious felony enhancements, and counsel for both sides pointed out he also had discretion to strike the gun enhancement under a recent amendment to the Penal Code. The judge declined to strike the gun enhancement (as we've seen) but concluded he *would* strike the prison prior and prior serious felony enhancements.

The prosecutor agreed with the judge's decision to strike the prison prior and prior serious felony enhancements but impose the gun enhancement. However, she argued that even if the judge struck the enhancements, he was still required to add them to Flores's minimum indeterminate term. Using the incorrect approach from her sentencing brief that

15

added enhancements to the minimum term twice, she argued the judge had no discretion to reduce Flores's minimum term below 69 years.

The judge ultimately accepted the prosecutor's argument. He imposed a minimum indeterminate term of 69 years then stated he was exercising his discretion not to impose separate determinate terms for any of the enhancements because the minimum term was punishment enough. The judge explained, "you're absolutely right. That is—option 3 is a minimum of 69 to life. I have no discretion to decrease that. But I do have discretion not to go higher, and that's what I'm exercising. [¶] . . . [¶] . . . 69 to life . . . sufficiently punishes the defendant for what happened."

While this appeal was pending, the Legislature eliminated prison prior enhancements except in limited circumstances not present here. (E.g., *People v. Jennings* (2019) 42 Cal.App.5th 664, 681 ["Effective as of January 1, 2020, Senate Bill No. 136 . . . amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses"].)

3. *Analysis*

Flores's sentence is the product of two errors. The first is that the judge added the terms for each of the three enhancements to the minimum indeterminate term *twice*. In Option 3 cases, enhancements are used twice *in total*, but only once in calculating the minimum indeterminate term. The second time they are used is to add a separate determinate term to the life sentence. (*Williams*, *supra*, 34 Cal.4th at p. 403.)

16

The judge's second error was to conclude enhancements may be stricken from one aspect of the sentence but not the other. In other words, he determined that even if he struck an enhancement, he nevertheless had to include it when calculating Flores's minimum indeterminate term. This is incorrect; if an enhancement or its punishment is stricken under section 1385, it cannot be used to increase any aspect of punishment.

"[S]entencing enhancements 'derive their vitality from and form a part of the crime to which they are attached and alter the consequences the offender may suffer. The most direct consequence is additional punishment.'" (*People v. Fuentes* (2016) 1 Cal.5th 218, 225 (*Fuentes*).) Section 1385 authorizes trial judges to strike an enhancement altogether or to strike only the "punishment" for the enhancement. If a judge strikes the enhancement, it's as if the fact of the enhancement never existed—it will not remain on the defendant's criminal record nor will it affect them in any potential future sentencing. If, however, a judge strikes the punishment only, the fact of the enhancement *will* remain in the defendant's criminal record, but the enhancement cannot be used to "add *any* punishment" in the current case. (See *Fuentes*, at pp. 225-226, italics added.)

Here, it's undisputed that setting a minimum indeterminate term is a form of punishment. The longer that term, the more time a defendant must serve in prison before becoming eligible for parole. Thus, the People correctly concede that because Flores's prison prior enhancement is no longer authorized, it must be removed from his sentence entirely. That is, it cannot be used to calculate the minimum indeterminate term nor can it be imposed as a separate one-year term to be served before the life sentence.

The People take a different position on the prior serious felony, however. They acknowledge the judge struck the enhancement but argue that "once a qualifying prior conviction is used as a strike, it must also be used to calculate the [minimum] indeterminate term" under Option 3. They argue that because the judge declined to dismiss one of Flores's two *strike offenses*, the judge was required to add the five years associated with the prior serious felony *enhancement* to the minimum indeterminate term. For support, they point to the sentence in *Acosta*, in which the five years for a prior serious felony enhancement was included in the defendant's minimum indeterminate term.

The problem with the People's argument is it equates strike convictions with prior serious felony enhancements, which are distinct concepts with different sentencing consequences. A prior serious felony enhancement functions to add an additional term of punishment to a defendant's sentence. Prior strike convictions, in contrast, trigger application of the Three Strikes law, which is not an enhancement but rather an alternate penalty provision. "The Three Strikes law is a penalty provision, not an enhancement. It . . . does not add an additional term of imprisonment to the base term. Instead, it provides for an alternate sentence . . . when it is proven that the defendant has suffered at least two prior serious felony convictions." (*People v. Williams* (2014) 227 Cal.App.4th 733, 744.)

The People's reliance on the sentence in *Acosta* is misplaced because prior serious felony enhancements were mandatory when that sentence was imposed. As a result, the court had no choice but to add the five-year term for the enhancement to the defendant's

18

minimum indeterminate term under Option 3. (*Acosta*, *supra*, 29 Cal.4th at p. 115.) Now, however, judges have discretion to strike or dismiss a prior serious felony enhancement; and they may do so even if they choose not to also dismiss a prior strike conviction.

A few months before Flores was sentenced, "a new law went into effect permitting the trial court to strike a serious felony enhancement in furtherance of justice." (*People v. Stamps* (2020) 9 Cal.5th 685, 692-693 ["on September 30, 2018, the governor approved Senate Bill No. 1393 . . . allowing a trial court to dismiss a serious felony enhancement"]; see also Stats. 2018, ch. 1013, §§ 1, 2.) According to the legislative history of the new law, making such enhancements mandatory resulted in a "'rigid and arbitrary system [that] has meted out punishments that are disproportionate to the offense, which does not serve the interests of justice, public safety, or communities.'" (*Stamps*, at p. 702, quoting Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1393 (2017-2018 Reg. Sess.) as amended May 9, 2018, pp. 1-2.) Giving trial courts discretion to strike the enhancement brings section 667, subdivision (a) in line with other sentence enhancements while still retaining existing penalties for serious crimes and recidivism. (*Stamps*, at p. 702.)

This is because, now that the enhancements are discretionary, there is no reason a judge could not strike the punishment associated with the enhancement but decline to dismiss the underlying strike conviction. In such a case, the strike conviction would trigger the alternative punishment mandated under the Three Strikes law (thereby punishing the defendant for their recidivism), but the defendant would not receive the additional punishment associated with the prior serious felony enhancement. We

19

therefore reject the People's argument that the refusal to strike or dismiss a prior strike conviction has any bearing on the impact of the decision to strike a prior serious felony enhancement.

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Where "a court may have been influenced by an erroneous understanding of the scope of its sentencing powers," the proper remedy is remand for resentencing. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) Remand is appropriate here because the judge misunderstood the scope of his sentencing discretion under the Three Strikes law. Specifically, he mistakenly believed (i) he had no discretion to remove stricken enhancements from the minimum indeterminate term and (ii) enhancements are included twice in calculating that term.

On remand, the judge must remove the prison prior enhancement from both aspects of the sentence and resentence Flores. However, because the judge misunderstood the impact striking an enhancement has on the sentence, he should exercise his informed discretion on the remaining enhancements. Stricken enhancements may not be used to "add *any* punishment" to the sentence, whether as an additional determinate term or as a means of lengthening the minimum indeterminate term. (*Fuentes*, *supra*, 1 Cal.5th at p. 226, italics added.)

# III

# DISPOSITION

We remand for resentencing but in all other respects affirm the judgment.

CERTIFIED FOR PUBLICATION

SLOUGH _____

J.

We concur:

MILLER _____

    Acting P. J.

RAPHAEL _____

    J.

21